UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL M., II,

                        Plaintiff,

                                                    5:21-CV-0123
v.                                                  (GTS)

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

                        Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

JAFRI LAW FIRM                                      FARVA JAFRI, ESQ.
  Counsel for Plaintiff
50 Evergreen Row
Armonk, NY 10504

SOCIAL SECURITY ADMINISTRATION                      NATASHA OELTJEN, ESQ.
OFFICE OF GENERAL COUNSEL
  Counsel for Defendant
6401 Security Blvd.
Baltimore, MD 21235

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this action filed by Michael M., II ("Plaintiff") against the

Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant"), pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings (Dkt. No. 13),

and (2) Defendant's motion for judgment on the pleadings (Dkt. No. 14). For the reasons set

forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion

for judgment on the pleadings is granted.

## I.    RELEVANT BACKGROUND

### A.      Relevant Facts

Plaintiff was born in 1968, making him 49 years old at the time he applied for Title II

disability insurance benefits and Title XVI supplemental security income under the Social

Security Act, alleging disability beginning August 26, 2014. (Dkt. No. 13-1, at 1; T. 21.)[1]

Plaintiff alleges he is disabled due to post-traumatic stress disorder ("PTSD"), depression,

anxiety, nightmares, panic attacks, status-post right tibia closed reduction and intramedullary

nailing, post-traumatic arthritis, osteoarthritis, right knee pain, left elbow problems, and left

shoulder pain. (T. 24; Dkt. No. 13-1, at 2.)

### B.      Procedural History

On March 18, 2018, Plaintiff applied for Title II disability insurance benefits and

protectively filed a Title XVI application for supplemental security income, alleging disability

beginning on August 26, 2014. (T. 21.) These claims were initially denied on July 3, 2018. (T.

21, 92, 102.) On July 6, 2018, Plaintiff's written request for a hearing was received, and Plaintiff

appeared and testified at a video hearing on August 13, 2019. (T. 21, 44-65.) Plaintiff appeared

at this hearing with two attorneys: Thomas J. Giordano, Jr., and Christopher Thorpe. (T. 21, 44-

65.) Administrative Law Judge Elizabeth W. Koennecke ("ALJ") presided over this hearing. (T.

21, 44-65.) On January 7, 2020, the ALJ held a supplemental video hearing. (T. 21, 66-80.) On

February 24, 2020, the ALJ issued a written decision finding that Plaintiff was not disabled

under the Social Security Act. (T. 21-36.) On November 24, 2020, the Appeals Council denied

review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

---

[1]      The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing
system.

### C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following eleven findings of fact and conclusions of law. (T. 11-27.)

First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (T. 24.)

Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 26, 2014, the alleged onset date. (T. 24.)

Third, the ALJ found that Plaintiff has two severe impairments: (1) a cervical spine impairment; and (2) a mental impairment generally characterized as post-traumatic stress disorder ("PTSD"), major depressive disorder, and anxiety. (T. 24-25.) More specifically, the ALJ found that the documented medical evidence of record, which consists of clinical and diagnostic findings, persuasively supported a conclusion that Plaintiff's cervical spine impairment and mental impairment significantly limit his ability to perform basic work activities. (T. 24.) The ALJ also found that no medical evidence supports the existence of any significant limitations due to Plaintiff's hypertension, diabetes mellitus, right leg fracture, or any other alleged condition, and that these conditions (either singly or in combination) cause no more than a minimal limitation to Plaintiff's ability to perform basic work activities. (T. 24.) The ALJ likewise found that, with respect to Plaintiff's hypertension and diabetes mellitus, the medical evidence of record shows that these conditions have been medically managed (with no complications) during the period at issue, and that there is no evidence to demonstrate the existence of any residuals to Plaintiff following his right tibia fracture and corresponding surgery. (T. 24-25.)

Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 25-27.) More specifically, the ALJ found that, with respect to Plaintiff's mental impairments (i.e., PTSD, major depressive disorder, and anxiety), Plaintiff had no more than mild or moderate limitation in the four functional areas set out in "paragraph B." (T. 25-26.) The ALJ found that, because Plaintiff's mental impairments do not cause at least one extreme limitation or two marked limitations, the paragraph B criteria are not satisfied. (T. 26-27.) The ALJ further found that the record does not establish the presence of the "paragraph C" criteria. (T. 26-27.)

Fifth, the ALJ found that Plaintiff has the following residual functional capacity ("RFC"):

> Claimant has the residual functional capacity to perform light work with the following limitations: no overhead working, so he can reach overhead occasionally, but cannot do sustained work overhead; he retains the ability to understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, and handle simple, repetitive work-related stress, in that he can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require him to supervise or manage the work of others; he should avoid work requiring more complex interaction or joint effort to achieve work goals; and he can tolerate superficial contact with the public.

(T. 27.)

More specifically, the ALJ made the following seven findings regarding Plaintiff's RFC after she recited his reports of his symptoms: (1) Plaintiff's last job (which ended in 2013 or 2014) was terminated due to an interpersonal conflict between Plaintiff's wife and his boss, and not due to any alleged physical or mental impairment (T. 31); (2) Plaintiff provided conflicting testimony about his role caring for his children and the injury he sustained to his left shoulder and neck (T.

4

31); (3) the incident at the core of Plaintiff's PTSD occurred when Plaintiff was sixteen years old, but he continued to work for a long time thereafter (T. 31); (4) Plaintiff's treating records from his mental health provider show continued improvement in his functioning, including that he stopped attending mental health counseling six months prior to his first administrative hearing (T. 31); (5) the medical opinion from J. Lawrence ("Lawrence"), the State Agency medical consultant, that Plaintiff did not have a severe physical impairment or combination of impairments, was unpersuasive because Lawrence never examined Plaintiff in person and his opinion was not consistent with the evidence in the record (T. 31-32); (6) the medical opinion from Elke Lorensen, M.D. ("Dr. Lorensen), was unpersuasive to the extent she opined that Plaintiff had moderate limitations with squatting and pushing and pulling with his left arm (T. 32); and (7) the medical opinion from Dr. Dennis M. Noia, Ph. D. ("Dr. Noia"), regarding Plaintiff's mental impairments was partially persuasive, with the exception of the opinion stating that Plaintiff appears to have marked limitations regulating emotions, controlling behavior, and maintaining well-being, which were unsupported by Dr. Noia's examination notes and Plaintiff's daily activities. (T. 32-33).

Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 33.) More specifically, the ALJ found that the vocational expert ("VE") at the supplemental hearing testified that an individual with Plaintiff's RFC could not perform Plaintiff's past relevant work. (T. 33.)

Seventh, the ALJ found that Defendant was born on December 19, 1968, and was 45 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date. (T. 33.) The ALJ found that he subsequently changed age categories to "closely approaching advance age." (T. 33.)

Eighth, the ALJ found that Plaintiff has at least a high school education and is able to communicate in English. (T. 33.)

Ninth, the ALJ found that the transferability of job skills was not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," regardless of whether he has transferable job skills. (T. 33.)

Tenth, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, he can perform jobs existing in significant numbers in the national economy. (T. 33.) More specifically, the ALJ found persuasive the VE's conclusions regarding Plaintiff ability to perform the following three roles, which the VE identified after the ALJ provided a hypothetical matching the level of exertion and limitations found in the ALJ's RFC determination: (1) price marker, Dictionary of Occupational Titles ("DOT") code 209.587-034; (2) mail clerk, DOT code 209.687-026; and (3) router clerk, DOT 222.587-038. (T. 33-35.) The ALJ found that, although the VE's conclusions that Plaintiff could perform these roles deviated from the DOT because it does not address the direction of reaching (and these three positions require frequent reaching), a reasonable explanation existed for the discrepancy, because the VE testified that, based on his experience, Plaintiff could still perform these roles with a reaching limitation. (T. 34-35.) The ALJ further found that the alternative hypothetical questions posed by Plaintiff's attorney at the supplemental hearing all contained limitations that are not supported by the medical evidence, and the VE's responses were therefore unpersuasive. (T. 35.)

Eleventh, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 26, 2014, through the date of the ALJ's decision. (T. 35.)

### D.     The Parties' Briefing on Their Motions

### 1.      Plaintiff's Motion for Judgment on the Pleadings

Generally, in his motion, Plaintiff sets forth four arguments. (Dkt. No. 13-1.)

First, Plaintiff argues that the ALJ ignored the treating physician rule and disregarded Dr.

Noia's analysis of him. (*Id.* at 4-5.) More specifically, Plaintiff argues that, despite finding

persuasive certain positive statements Dr. Noia made about Plaintiff, the ALJ improperly ignored

the following portion of Dr. Noia's assessment: "Difficulties are caused by psychiatric problems.

Results of the examination appear to be consistent with psychiatric problems, and this may

significantly interfere with the claimant's ability to function on a daily basis." (*Id.* at 5 [quoting

T. 575].) Plaintiff argues that Dr. Noia also suggested that Plaintiff seek more intensive treatment

and that his difficulties may significantly interfere with his ability to function. (*Id.*) Plaintiff

argues that these findings provide support for the determination that Plaintiff has an extreme

limitation with respect to functioning where other individuals are present. (*Id.*)

Second, Plaintiff argues that the ALJ violated her duty to develop the factual record by

attempting to "stand in" as a physician. (*Id.* at 5-6.) More specifically, Plaintiff argues that,

although the ALJ acknowledged Plaintiff's diagnosis of PTSD, she improperly "stood in as

physician" when she concluded that this older condition should not be "such a problem" now.

(*Id.* at 6.) Plaintiff argues that PTSD is a life-long condition with many nuances, and that the ALJ

should not opine when PTSD will trigger a problem for the individual affected. (*Id.*) Plaintiff

also argues that the ALJ failed to address Plaintiff's reports of suicidal ideation on October 27,

2016. (*Id.*)

Third, Plaintiff argues that the ALJ inconsistently applied weight to Dr. Noia's testimony.

(*Id.* at 6-7.) More specifically, Plaintiff argues that the ALJ found persuasive Dr. Noia's

testimony regarding Plaintiff's lack of limitations in certain areas, but that she rejected Dr.

Noia's testimony that Plaintiff has marked limitations "regulating emotions, controlling behavior, and maintaining well-being." (*Id.* at 6 [quoting T. 32].) Plaintiff argues that the ALJ inconsistently applied a single expert's findings to suit her desired outcome. (*Id.* at 6-7.)

Fourth, Plaintiff argues that the ALJ did not consider Plaintiff's limitations in getting to his hypothetical place of work. (*Id.* at 7.) More specifically, Plaintiff argues that he cannot drive after his license was revoked, and that Dr. Noia's testimony (along with his own) confirmed that he cannot use public transportation due to his anxiety and PTSD. (*Id.* at 7.) Plaintiff argues that the ALJ improperly disregarded evidence that his disability prevents him from commuting to work, and, in turn, that he cannot perform the "on-site" jobs identified by the VE. (*Id.*)

### 2.    Defendant's Motion for Judgment on the Pleadings

Generally, in her motion, Defendant sets forth four arguments. (Dkt. No. 14.)

First, Defendant argues that there is sufficient evidence in the record to persuade a reasonable mind that Plaintiff could tolerate a range of simple work. (*Id.* at 5-8.) More specifically, Defendant argues that it is Plaintiff's burden to show that he was more limited than the ALJ found, but that he has failed to do so because the ALJ's RFC determination is supported by findings from Dr. Noia and Dr. Lieber-Diaz, Psy. D., as well as Plaintiff's testimony and treatment records. (*Id.*)

Second, Defendant argues that the ALJ properly weighed Dr. Noia's opinion. (*Id.* at 8-11.) More specifically, Defendant argues that the ALJ was not required to adopt Dr. Noia's opinion in full. (*Id.* at 8.) Defendant argues that Dr. Noia's own examination of Plaintiff did not support marked limitations with respect to regulating emotions, controlling behavior, and maintaining well-being, and that both Dr. Lieber-Diaz's findings and Plaintiff's own statements about his daily activities provide additional support for the ALJ's determination. (*Id.* at 9.)

Defendant argues that, although Dr. Noia stated that Plaintiff's mental impairments "may significantly interfere with [his] ability to function on a daily basis," this was not a definite statement and that it was further undercut by Dr. Noia's own examination, Dr. Lieber-Diaz's findings, and Plaintiff's daily activities. (*Id.* at 10.) Defendant argues that Plaintiff is improperly requesting the Court to re-weigh the evidence in his favor. (*Id.* at 10-11.)

Third, Defendant argues that the ALJ properly considered Plaintiff's PTSD. (*Id.* at 11-12.) More specifically, Defendant argues that the ALJ's comments about Plaintiff's ability to work after the event giving rise to his PTSD was, in essence, a statement that the evidence did not support a finding that Plaintiff's PTSD rendered him disabled. (*Id.* at 11.) Defendant argues that this finding is supported by Plaintiff's treatment records, which show continued improvement in his condition and that he stopped attending mental health counseling six months prior to his first hearing. (*Id.*) Defendant further argues that, although the ALJ did not discuss Plaintiff's October 2016 suicidal ideation, she is not required to discuss all the evidence submitted, and this isolated incident appears to have been medication induced. (*Id.*) Defendant finally argues that, to the extent the ALJ erred with respect to either of these determinations, any error is harmless because the ALJ's findings are supported by substantial evidence. (*Id.* at 11-12.)

Fourth, Defendant argues that the revocation of Plaintiff's driver's license is irrelevant to the disability decision. (*Id.* at 12.) More specifically, Defendant argues that Dr. Noia did not state that Plaintiff could not use public transportation, but rather that Plaintiff *told* Dr. Noia that he did not use public transportation. (*Id.*) Defendant further argues that Plaintiff's inability to travel to a job is irrelevant to the disability determination if the reason he is unable to travel is extrinsic to his alleged disabling condition. (*Id.*)

## II.      APPLICABLE LEGAL STANDARDS

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d

856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the

correct legal standards were not applied, or it was not supported by substantial evidence.  *See*

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

doubt whether the ALJ applied correct legal principles, application of the substantial evidence

standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal

principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has

been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is

deemed susceptible to more than one rational interpretation, the Commissioner's conclusion

must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord*, *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.   Whether the ALJ Properly Evaluated Dr. Noia's Opinion

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14.) To those reasons, the Court adds the following analysis.

Preliminarily, the Court notes that, in making her decision, the ALJ assessed Dr. Noia's opinion at both Step Three and Step Four of her analysis. (T. 25-33.) Because it is unclear from the pleadings which determination Plaintiff challenges,[2] the Court addresses both.

### 1.   The ALJ's Analysis of Dr. Noia's Opinion at Step Three

When addressing each of the four functional areas in the paragraph B criteria at Step Three, the ALJ relied upon Dr. Noia's consultative psychiatric examination of Plaintiff on June 19, 2018. (T. 25-26.) In doing so, the ALJ found that Plaintiff had no more than moderate limitations in any of the four functional areas. (T. 25-26.) As the Court addressed in Part I.D.1. of this Decision and Order, Plaintiff argues that this finding fails to consider Dr. Noia's statements that Plaintiff's "psychiatric problems . . . may significantly interfere with [his] ability

---

[2]     Plaintiff's motion initially argues that "the ALJ['s] conclusion that Plaintiff's mental impairments 'do not cause at least one extreme limitation or two marked limitations' . . . was incorrect," citing the portion of the ALJ's transcript that discusses the ALJ's Step Three determination. (Dkt. No. 13-1, at 4-5 [citing T. 26].) In a later section of his motion, Plaintiff challenges the ALJ's failure to adopt Dr. Noia's marked limitations "regulating emotions, controlling behavior, and maintaining well-being"—a determination the ALJ addressed in its RFC analysis at Step Four. (Dkt. No. 131-1, at 6-7 [citing T. 32].) Defendant's motion addresses the portion of the ALJ's Step Four analysis. (Dkt. No. 14, at 8-11.)

to function on a daily basis" and that Plaintiff has marked limitations "regulating emotions,
controlling behavior, and maintaining well-being . . . ." (Dkt. No. 13-1, at 5.) Plaintiff also
argues that the ALJ's determination ignores other evidence in the record regarding his regular
attendance at counseling appointments, his severe anxiety when forced to interact with others,
and his agoraphobic avoidance, major depressive disorder, and PTSD. (T. 575; Dkt. No. 13-1, at
5.) Plaintiff argues that this evidence gives "cause to determine that Plaintiff has one extreme
limitation, which is functioning in an environment where there could be other individuals, i.e., a
work environment." (Dkt. No. 5.)

"In assessing mental impairments at step three, the ALJ must employ a 'special
technique' to evaluate the severity of a claimant's mental impairments." *Richard B. v. Comm'r of
Soc. Sec.*, 20-CV-0585, 2021 WL 4316908, at *5 (W.D.N.Y. Sept. 23, 2021) (citing *Kohler v.
Astrue*, 546 F.3d 260, 266 (2d Cir. 2008)). "This technique involves rating a claimant's degree of
functioning in four broad functional areas, otherwise known as the 'paragraph B' criteria," which
include the claimant's ability to "(1) understand, remember, or apply information; (2) interact
with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself."
*Richard B.*, 2020 WL 4316908, at *5 (quoting 20 C.F.R. § 404.1520a(c)(4)). The ratings applied
to a claimant's degree of functioning include "[n]one, mild, moderate, marked, and extreme." 20
C.F.R. § 404.1520a(c)(4). "[T]o satisfy the criteria of paragraph B, a claimant's mental disorder
must result in an 'extreme' limitation of at least one of the four criteria, or a 'marked' limitation
in at least two such criteria." *Blocker v. Saul*, 18-CV-6788, 2020 WL 1047737, at *4 (W.D.N.Y.
Mar. 4, 2020).

Despite Plaintiff's contentions, the ALJ appropriately evaluated the criteria at Step Three,
and her determination that Plaintiff does not have marked (or, as Plaintiff contends, extreme)

limitations in any of the four functional areas identified in the paragraph B criteria is supported by substantial evidence.[3] To begin, in making her Step Three determination, the ALJ properly relied upon Dr. Lieber-Diaz's psychiatric review report, which stated that Plaintiff had no more than mild limitations in any paragraph B category. (T. 27 [citing T. 89-90].)

Further, although not adopting Dr. Noia's opinion that Plaintiff had marked limitations "regulating emotions, controlling behavior, and maintaining well-being," the ALJ "did expressly consider and cite Dr. [Noia's] examination[] in her . . . analysis." *Richard B.*, 2020 WL 4316908, at *5. In fact, the ALJ thoroughly addressed Dr. Noia's opinion and, in doing so, identified the following, which support her determination regarding no marked limitations and undermine Dr. Noia's finding to the contrary: (1) Plaintiff "denied having any symptoms of formal thought disorder"; (2) Dr. Noia determined that Plaintiff's "recent and remote memory skills were . . . intact," that his "judgment was good," and that his "intellectual functioning was in the average range"; (3) Plaintiff's speech was fluent, his expressive and reflective language were adequate, his motor behavior was normal, and his eye contact was appropriate; (4) Plaintiff "got along with friends and family"; (5) Plaintiff's "thought processes were coherent and goal-directed, with no evidence of delusions, hallucinations, or disordered thinking"; and (6) Plaintiff could "dress, bathe, groom himself, cook and prepare food, do general cleaning, do laundry, manage money,

---

[3]      *See Carla S. v. Saul*, 19-CV-1283, 2021 WL 1131268, at *6 (W.D.N.Y. Mar. 24, 2021) (denying the plaintiff's motion on the pleadings where the plaintiff argued that the ALJ gave "'great weight' to [a doctor's] opinion with regard to the areas in which the ALJ found [the plaintiff] had no limitation, mild limitation, or a moderate limitation," but "discount[ed]  the 'marked' limitations assessed by [the doctor]," because the "evidence in the record establishe[d] at most that it [was] susceptible to more than one rational interpretation, including the ALJ's decision that Plaintiff [was] not disabled under the Act").

and drive[.]" (T. 25-27, 573-75; Dkt. No. 14, at 6 [citing each piece of Dr. Noia's opinion supporting the ALJ's finding of no marked limitation].)

Likewise, to support her Step Three determination, the ALJ cited "progress notes" and office treatment records from the Community Clinic of Jefferson County spanning the time period of May 2018 through October 2019—a portion of which show that Plaintiff has custody of his two daughters and, at that time, "work[ed] 26 hours a week (tree trimming and keeping the cemetery clean as required to by D.S.S.)." (T. 27, 633-708, 750-770.)

Plaintiff's testimony at the first hearing also revealed that he cares for his children (including doing their laundry, helping with schoolwork, and taking care of the household chores) and "rarely" (i.e., "[a]bout once a month" or maybe a couple of times a month) needs his older daughter's assistance to take care of them. (T. 57-58.) He also testified about the following: (1) he takes care of his basic hygiene needs, except for on "a bad day"; (2) his medication at the time of the initial administrative hearing "help[ed]" and "actually work[ed]"; and (3) he had stopped attending his counseling appointments approximately six months before. (T. 59, 62-63.) *See Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006) (summary order) ("[I]t is entirely appropriate for an ALJ to consider a claimant's daily activities in assessing her credibility and capacity to perform work-related activities."); *Carlos R.C.G. v. Berryhill*, 17-CV-0781, 2018 WL 4554495, at *7 (N.D.N.Y. Sept. 21, 2018) (Suddaby, C.J.); *Blocker*, 2020 WL 1047737, at *4.

Despite the evidence supporting the ALJ's determination, Plaintiff relies heavily on Dr. Noia's statement that Plaintiff's mental impairments "may significantly interfere with [his] ability to function on a daily basis" as a means of challenging the ALJ's Step Three determination. (Dkt. No. 13-1, at 5.) This statement, however, does not definitively establish that

15

Plaintiff cannot work,[4] and does not (on its own) show that the ALJ's Step 3 determination is not supported by substantial evidence.

Ultimately, "[t]he ALJ was well within [her] duty to reconcile the conflicting evidence and determine that the plaintiff's impairments, or combination of impairments, did not meet or equal a listing." *Richard B.*, 2020 WL 4316908, at *5. Although Plaintiff argues that other evidence in the record supports marked (or extreme) limitations at Step Three, it is not the Court's role to reweigh the evidence supporting the ALJ's contrary determination. *See Boffoli v. Comm'r of Soc. Sec.*, 20-CV-5317, 2022 WL 973754, at *9 (S.D.N.Y. Mar. 31, 2022) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve, and the deferential standard of review prevents us from reweighing it. Furthermore, even if the ALJ had given great weight to [Dr. Noia's] assessment, a finding of a marked limitation in one area is not sufficient to satisfy the paragraph B criteria.") (cleaned up).

## 2.   The ALJ's Analysis of Dr. Noia's Opinion at Step Four

The ALJ also did not err when evaluating Dr. Noia's opinion with respect to Plaintiff's RFC. More specifically, the ALJ stated that Dr. Noia's opinion was persuasive in several areas, but that she "decline[d] to adopt [his] . . . determination that [Plaintiff] appears to have marked limitations regulating emotions, controlling behavior, and maintaining well-being . . . ." (T. 32.) The ALJ restated her finding that Plaintiff had "no more than a moderate limitation" in this area, and provided the following as support for her determination: (1) "Dr. Noia's own exam findings . . . do not support a marked limitation in [Plaintiff's] mental functioning"; (2) "[Plaintiff's]

---

[4]     *See Burgen v. Colvin*, 14-CV-0131, 2014 WL 7408273, at *7 (N.D.N.Y. Dec. 30, 2014) (D'Agostino, J.) (explaining that a doctor's statement that a claimant "may have" certain "difficulties" did not definitively establish an inability to work).

activities of daily living, which include working 26 hours a week at a cemetery and being a full-time father, fail to support the marked level of disability to which Dr. Noia had opined"; and (3) any concern raised by Dr. Noia regarding Plaintiff's mental functioning was acknowledged by her RFC determination, which "limit[ed] [him] to simple tasks performed in a reduced-stress work environment." (T. 32-33.)

As the Court previously addressed, the ALJ's determination at Step Three that Plaintiff did not have a marked limitation is supported by substantial evidence. (T. 27-32, 89-90, 573-75, 634.) Moreover, with respect to her RFC determination, the ALJ limited Plaintiff to simple tasks performed in a reduced-stress work environment that "does not require him to supervise or manage the work of others," requires only "occasional decisions directly related to the performance of simple tasks" and "superficial contact with the public," and permits him to "avoid work requiring more complex interaction or joint effort to achieve work goals . . . ." (T. 27, 33.)

This RFC determination shows that, contrary to Plaintiff's contention, this is not a case where the ALJ "inconsistently appl[ied] a single expert's findings to suit [her] desired outcome[.]" (Dkt. No. 13-1, at 6-7.) Rather, this RFC determination considers Dr. Noia's concerns regarding Plaintiff's ability to regulate emotions, control his behavior, and maintain his well-being. *Cf. Hill v. Comm'r of Soc. Sec.*, 18-CV-1161, 2020 WL 836386, at *4 (W.D.N.Y. Feb. 20, 2020) ("The RFC, as it stands, limits Hill to performing simple, routine and repetitive tasks, and simple work-related decisions, and to only occasional interaction with coworkers and the public. Courts have found that such limitations adequately accommodate marked limitations in a claimant's ability to adapt or manage oneself.") (citing cases); *Richard B.,* 2021 WL 4316908, at *8. This consideration of Dr. Noia's concerns is proper even where, as here, the ALJ

found that Plaintiff did not have a marked limitation in this area. *See Richard B.*, 2021 WL 4316908, at *6 (noting that "[t]he ALJ's finding that [the] medical opinion evidence was persuasive toward making the RFC determination does not create a binding effect on whether those opinions establish plaintiff's functional impairments under the 'paragraph B' criteria at step three," because "determination of the step three factors of impairment are distinct from the determination of RFC at step four").

Further, the ALJ's adoption of some (but not all) of Dr. Noia's findings is permissible. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Simply put, "[t]here is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner." *Kitka v. Comm'r of Soc. Sec.*, 15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016); *Jones v. Colvin*, 13-CV-1214, 2014 WL 3728939, at *5 (N.D.N.Y. July 25, 2014) (Mordue, J.) ("The ALJ is free to rely upon portions of a medical opinion that are 'internally consistent and well-supported by the objective medical evidence' and may reject portions that are contradicted by the doctor's own observations.") (internal quotation marks omitted).

For these reasons, the Court finds that the ALJ properly assessed Dr. Noia's opinion.

**B.     Whether the ALJ Violated Her Duty to Develop the Factual Record by "Standing In" as a Physician With Respect to Plaintiff's PTSD**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14.) To those reasons, the Court adds the following analysis.

When addressing her RFC determination, the ALJ stated the following about Plaintiff's PTSD: "While the claimant's post-traumatic trauma occurred at the age of 16, he was thereafter still able to work for a long time, and there is nothing of record to indicate why this condition has now become such a problem." (T. 31.) The ALJ thereafter stated that "[t]he treating records from

[Plaintiff's] mental health provider show continued improvement in the claimant's functioning; he testified that he stopped receiving mental health counseling six months prior to his hearing." (T. 31.) Plaintiff argues that the ALJ improperly "stood in as 'physician' when she concluded that this old condition . . . should not now be 'such a problem.'" (Dkt. No. 13-1, at 6.)

The ALJ's statement about there being "nothing of record to indicate why [Plaintiff's PTSD] has now become such a problem," although arguably not well articulated, does not indicate that the ALJ improperly "stood in as physician" or did not consider Plaintiff's longitudinal mental health. *See Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (highlighting that "a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health"). Rather, the statement expresses the ALJ's determination that the record evidence does not support a finding that Plaintiff could not work (with appropriate limitations) due to his PTSD, which, as the Court addressed in Part III.A. of this Decision and Order, is supported by substantial evidence.

Other portions of the ALJ's decision confirm this reading of the challenged statement. For example, at Step Two, the ALJ found that Plaintiff's PTSD constituted a severe impairment—a finding that weakens any implication by Plaintiff that the ALJ did not appreciate the impact of his condition or that she "stood in as physician." (Dkt. No. 13-1, at 6 ["PTSD is life-long condition with many nuances—the ALJ is in no position to opine as to when PTSD will trigger a problem for the individual who is affected."].)

Likewise, the ALJ's failure to mention Plaintiff's reports that he experienced suicidal ideation on October 27, 2016, is not cause for remand. "'Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [her] failure to cite specific evidence does not indicate that it was not considered.'" *Barringer v. Comm'r of Soc.*

19

*Sec.*, 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005) (Sharpe, J.) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Plaintiff is correct that the ALJ did not specifically address this one incident, but she did address that Plaintiff "denied having . . . any suicidal or homicidal ideation on June 19, 2018[.]" (T. 30.) Further, Plaintiff's treatment records show that the "suicidal thoughts" in October 2016 started after Plaintiff began taking Zoloft (which he thereafter stopped), and that, in the same examination, Plaintiff "strongly denie[d] that he [was] suicidal." (T. 555.)

Based on this evidence, the Court does not agree that the ALJ improperly "stood in as physician" or did not adequately address Plaintiff's report of suicidal thoughts from his evaluation in October 2016. Further, any finding to the contrary would constitute harmless error, and is not a basis for remand because the ALJ's RFC finding was supported by substantial evidence. *See Koch v. Colvin*, 570 F. App'x 99, 102 (2d Cir. 2014) (summary order) (finding an ALJ's "error was harmless because his RFC finding [was] supported by substantial evidence").

**C.    Whether the ALJ Erred By Not Considering Plaintiff's Potential Limitations in Getting to His Hypothetical Place of Work**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14.) To those reasons, the Court adds the following analysis.

As the Court addressed in Part I.D.1. of this Decision and Order, Plaintiff argues that the ALJ did not consider his limitations in getting to his hypothetical place of work, including that he had his license revoked for non-payment of child support and that he cannot use public transportation. (Dkt. No. 13-1, at 7.) Plaintiff argues that Dr. Noia's opinion supports his limitations with respect to using public transportation, and that the ALJ "simply disregarded that

[his] disability completely prevents him from even commuting to work." (*Id.*) This argument fails for three reasons.

First, although Plaintiff argues that "Dr. Noia . . . confirmed that [he] could not use public transportation due to his anxiety and PTSD[,]" (Dkt. No. 13-1, at 7), the administrative record shows that *Plaintiff told Dr. Noia* that he did not use public transportation and Dr. Noia noted it in his report. (T. 26, 574 ["[Plaintiff] reports that he can cook and prepare food, do general cleaning, laundry, avoids shopping . . ., can manage money, drive, and does not use public transportation."].) Plaintiff's representation in his motion that Dr. Noia "confirmed" that he could not use public transportation is therefore inaccurate.

Second, this is not a situation where, as Plaintiff argues, "the ALJ simply disregarded that [Plaintiff's] disability completely prevents him from even commuting to work." (Dkt. No. 13-1, at 8.) *See also Garcia v. Kijakazi*, 21-CV-1895, 2022 WL 3442314, at *13 (S.D.N.Y. Aug. 11, 2022) (remanding the case where "the ALJ failed to properly consider the claimant's inability to take public transportation" and the plaintiff "testified that she has never had a driver's license"). Rather, the ALJ did address this issue, but did not agree with Plaintiff's position.

When cross-examining the VE at the second administrative hearing, Plaintiff's attorney addressed a variety of potential limitations and how they might affect the jobs the VE identified for Plaintiff, including whether those positions could "be completed remotely . . . ." (T. 79.) In determining that jobs exist in significant numbers in the national economy for which Plaintiff can perform, the ALJ addressed these hypotheticals and stated as follows:

> The undersigned has given due consideration as well to the cross-examination of the vocational expert by the claimant's attorney at the hearing. *The additional alternative hypothetical questions posed by the claimant's attorney, however, all contained limitations for the claimant that are not supported by the medical evidence in the file.*

> Thus, the responses generated by the cross-examination of the vocational expert have been found to be unpersuasive.

(T. 33 [emphasis added].) Based on this paragraph, and contrary to Plaintiff's contention, the ALJ *did* consider (and found unsupported) the potential limitation regarding "remote work," which stems from Plaintiff's position that he cannot commute due to his revoked driver's license and alleged inability to use public transportation.

Third, the ALJ's determination is supported by the fact that Plaintiff testified that his license was revoked for "non-payment of child support" and that he can (and does) ride his bike into town from his home—facts that undercut his argument that "his disability completely prevents him from . . . commuting to work." (T. 64-65 [stating he can ride his bike and "ride around town if [he] [has] to go to the store . . . "].) *Cf. Bradley W. v. Comm'r of Soc. Sec.*, 19-CV-1217, 2020 WL 5848833, at *10 (N.D.N.Y. Oct. 1, 2020) (Baxter, M.J.) ("The ALJ also correctly noted that plaintiff's lack of transportation was not relevant for purposes of Social Security disability."); *Harmon v. Apfel*, 168 F.3d 289, 292-93 (6th Cir. 1999).

The Court accordingly finds that the ALJ did consider Plaintiff's potential limitations in getting to his hypothetical place of work, and therefore remand is not required.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 28 2022
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge